UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C. and<br>SLING TV L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>SENTRY, INC. and<br>MICHAEL GRAZIANO,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 9:23-cv-05074-RMG |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against Defendants Sentry, Inc. and Michael Graziano for violations of the anti-trafficking provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 1201. Defendants provide and profit from the sale of an illicit streaming service known as Tanggula that captures and retransmits Plaintiffs' television programming, without authorization, by circumventing Plaintiffs' security measures.

**PARTIES**

1. Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2. Plaintiff Sling TV L.L.C. ("Sling") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3. Defendant Sentry, Inc. ("Sentry") is a South Carolina limited liability company having its principal place of business in Hilton Head, South Carolina.

4. Defendant Michael Graziano ("Graziano") is an individual residing in Hilton Head,

1

South Carolina. Graziano is an officer and director of Sentry (the only other officer and director allegedly being his wife). Upon information and belief, Graziano operates Sentry from his home and makes the day-to-day decisions regarding the operation of the business, which he uses to process payments in connection with the infringing service at issue.

## JURISDICTION & VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of 17 U.S.C. § 1201.

6. Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in South Carolina and, through their wrongful conduct identified herein, Defendants purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business in South Carolina, causing injury to Plaintiffs in South Carolina.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## THE REBROADCASTING SCHEME

8. Plaintiffs provide television programming to millions of authorized, fee-paying subscribers of their Sling TV and DISH Anywhere services in the Unites States using the internet. Plaintiffs acquire the distribution rights to provide the programming pursuant to license agreements between DISH and various rights holders. The programming consists of live channels and on demand content and is subject to copyright protections. Plaintiffs' live channels, whether intended for Sling TV subscribers or DISH Anywhere subscribers, are transmitted over the internet

using the same Sling streaming platform ("Channels").

9. Plaintiffs implement digital rights management ("DRM") technology, with the rights holders' consent, to protect the Channels from unauthorized access, copying and retransmission. Each DRM technology uses a key-based subscriber authentication and encryption-decryption process to make Plaintiffs' Channels accessible to only authorized subscribers that purchase access to the Channels from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the Channels.

10. Defendants are trafficking in the Tanggula internet streaming television service ("Service") through their websites located at www.alltvboxes.com and www.elitetv2023.com ("Websites"). Undercover purchases of the Service made from the Websites show that Graziano is operating the Websites and processing the payments through his company Sentry.

11. Defendants sell the Service on the Websites for a one-time cost of approximately $349 to $499, depending upon the hardware selected by the user. Defendants emphasize that after the initial payment there are "No Fees Ever" (unlike legitimate pay-television services such as the services provided by Plaintiffs that charge a monthly subscription fee).

3



*Excerpt from www.alltvboxes.com*          *Excerpt from www.elitetv2023.com*

12. Defendants advertise the Service on the Websites as offering thousands of live channels, sports programs, movies, and adult content. Defendants tout that the Service beats the competition because it has "The Most Channels." Defendants' advertising places an emphasis on converting users from legitimate subscription-based television services such as those provided by Plaintiffs, stating for example "Never Pay An Extra Fee" and "Cut the Cord Now."



*Excerpts from www.elitetv2023.com*

13. Plaintiffs' Channels were transmitted without authorization to users that purchased the Service from Defendants. Identifiers that are unique to Plaintiffs' internet transmissions of the Channels were detected when conducting a technical analysis of the corresponding channels on the Service, thereby confirming that channels transmitted on the Service originated from Plaintiffs. Sling's logo was also observed on a channel transmitted on the Service, further demonstrating that Plaintiffs' Channels were used to seed the Service with unauthorized content. Periodic monitoring conducted on a sampling of channels on the Service showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Service without Plaintiffs' authorization.



*NFL RedZone from Sling*                    *USA NFL Redzone UHD from the Service*

14. Upon information and belief, Plaintiffs' Channels are retransmitted to users of the Service by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted

communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM protects against copying of Plaintiffs' Channels in the ordinary course of its operation by requiring that the encrypted audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

15. The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware). The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

16. Upon information and belief, Service users are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Channels from unauthorized access and copying is being circumvented as described above. Additional content provided on the Service is believed to be acquired from other legitimate pay-television providers that use the Widevine DRM through this process of circumvention, which enables the Service to offer thousands of channels and tens

of thousands of on-demand programs at a small fraction of the cost charged by legitimate providers that pay to license their content such as Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

17. Plaintiffs repeat and reallege the allegations in paragraphs 1-16.

18. Plaintiffs use DRM technology to effectively control access to their Channels that include works protected under the Copyright Act. Plaintiffs are authorized by the copyright owners to control access to the Channels and implement the DRM technology with their consent.

19. Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs' Channels that are retransmitted without authorization to users of the Service. Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Service.

20. The Service, or at least the component or part of the Service that involves gaining unauthorized access to Plaintiffs' Channels, is primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such DRM technology.

21. Defendants violate 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Service. Each sale of the Service constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

22. Defendants' actions violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

23. Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II
### Violations of the DMCA, 17 U.S.C. § 1201(b)(1)

24. Plaintiffs repeat and reallege the allegations in paragraphs 1-16.

25. Plaintiffs use DRM technology to effectively control copying of their Channels that include works protected under the Copyright Act. Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

26. Plaintiffs' Channels are retransmitted without authorization to users of the Service by circumventing Plaintiffs' DRM technology. Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Service.

27. The Service, or at least the component or part of the Service involving unauthorized retransmission of Plaintiffs' Channels to Service users, is primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such DRM technology.

28. Defendants violate 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Service. Each sale of the Service constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

29. Defendants' actions violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

30. Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## **PRAYER FOR RELIEF**

Plaintiffs request a judgment against Defendants as follows:

A. For a permanent injunction, as authorized by Fed. R. Civ. P. 65 and 17 U.S.C. § 1203(b)(1), that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from manufacturing, offering to the public, providing, or otherwise trafficking in the Service, or any other technology, product, service, device, component, or part thereof that:

1. is primarily designed or produced for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

2. has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; or

9

    3. is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work.

  B. For an order transferring all domain names and websites that Defendants used in connection with the Service to Plaintiffs.

  C. For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages up to $2,500 for each violation identified in Count I or Court II, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

  D. For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5);

  E. For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

  F. For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

  G. For such additional relief as the Court deems just and equitable.

(This space intentionally left blank; signature on the following page.)

Dated: October 10, 2023.                    Respectfully submitted,

                                                             *s/Mary D. LaFave*
                                                             Mary D. LaFave, Fed ID. #10316
CROWE LAFAVE GARFIELD & BAGLEY, LLC
2019 Park Street
Columbia, South Carolina 29201
803.726.6756 (office)
mary@crowelafave.com

Attorney for Plaintiffs DISH Network L.L.C.
and Sling TV L.L.C.

11